Charles E. EATON, Appellant (Defendant below),

v.

STATE of Indiana, Appellee (Plaintiff below).

No. 1279S355.

Supreme Court of Indiana.

Sept. 4, 1980.

William F. Wurster, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., John K. Silk, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Charles E. Eaton, was convicted in a bench trial of burglary, a class B felony, Ind.Code § 35–43–2–1 (Burns 1979 Repl.) and being an habitual offender, Ind.Code § 35–50–2–8 (Burns 1979 Repl.) (amended 1980). He was sentenced to ten years for the class B felony and thirty years on the habitual offender charge. He now raises three issues in this direct appeal:

1. Whether the trial court erred in denying a witness the right to invoke his fifth amendment privilege not to testify;

2. Whether there is sufficient evidence to support the trial court's finding of guilty; and

3. Whether the habitual criminal statute is unconstitutional under the due process clause of the fourteenth amendment.

The evidence most favorable to the state reveals that Timothy Kirk returned home from work in the afternoon of July 26, 1978, to find his back door open. He was sure that it had been closed when he left that morning. Kirk went inside and discovered an individual whom he had known in school. His stereo had been moved to a couch near the doorway, and the individual was carrying his guitar. Kirk accused the man of "ripping him off" whereupon the individual became apologetic and said that he had more of Kirk's "stuff" in a car parked outside. Kirk saw the automobile about twenty feet from his house hidden from plain view. Defendant was sitting on the driver's side. In the back seat, Kirk found a portable television and a tape recorder that belonged to him. Defendant said he was sorry and helped Kirk carry his possessions back into the house. Defendant and his companion then drove away, and Kirk summoned the police.

I.

The state first called Timothy Kirk as a witness. When asked about the events of July 26, 1978, he pleaded the fifth amendment. He was very equivocal about his reasons for not wanting to testify and demonstrated considerable confusion as to his fifth amendment rights. The trial judge eventually met with Kirk and counsel for both sides in chambers. Upon resuming the trial, the court announced that it had explained Kirk's fifth amendment rights to him. The court then asked Kirk if he thought that criminal charges could be brought against him as a result of his testimony to which he responded in the negative. The court also asked him if his reluctance to testify was based instead on rea-

sons of a "personal nature" to which Kirk responded in the affirmative. The trial judge then ruled that he did not have the right to invoke the fifth amendment, and Kirk proceeded to give testimony implicating defendant in the crime. Defendant asserts that the trial court erred in questioning the witness as to his motives for utilizing the fifth amendment and in ruling that he could not invoke it.

We need not address the merits of defendant's claim. We were presented with an identical argument in *Bryant v. State*, (1971) 256 Ind. 587, 271 N.E.2d 127. There, we held:

> "We would first observe that if the witness did in fact have a right to refuse to testify on the ground that it might incriminate her, this right was personal to her and is not available to the appellant either in the trial court or in this Court on appeal." *Id.* at 590, 271 N.E.2d at 129.

*Accord, United States v. Foster*, (7th Cir. 1973) 478 F.2d 1001. Even if we were to confront the issue, we do not believe that the trial court acted improperly, *Overman v. State*, (1924) 194 Ind. 483, 143 N.E. 604, nor do we believe that it committed error in ruling that the witness could not assert the constitutional privilege inasmuch as the purpose of the fifth amendment is to prevent compelled *self-incrimination*, not to protect private information. *Fisher v. United States*, (1976) 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39; *Garner v. United States*, (1976) 424 U.S. 648, 96 S.Ct. 1178, 47 L.Ed.2d 370; *United States v. Nobles*, (1975) 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141.

### II.

Defendant next contends that the evidence is not sufficient to support the guilty finding. He does not dispute his presence at the scene of the crime nor does he deny his role in driving the car. He does maintain that the evidence is insufficient to prove that he had knowledge that his companion was committing a burglary.

In reviewing the allegation of insufficient evidence, this Court will not weigh the evidence nor resolve questions of the credibility of witnesses, but will look only to that evidence and the reasonable inferences therefrom which support the finding of the trial court. The conviction will be affirmed if, from that viewpoint, there is evidence of probative value from which the trier of fact could reasonably infer that the defendant was guilty beyond a reasonable doubt. *Williams v. State*, (1976) 265 Ind. 354, 354 N.E.2d 246; *Yeary v. State*, (1972) 258 Ind. 587, 283 N.E.2d 356. A burglary conviction may rest upon circumstantial evidence, including the unexplained possession of recently stolen property. *Goodpaster v. State*, (1980) Ind., 402 N.E.2d 1239; *Campbell v. State*, (1971) 256 Ind. 40, 266 N.E.2d 797. We do not have to find that circumstantial evidence is adequate to overcome every reasonable hypothesis of innocence but only that an inference may reasonably be drawn therefrom which supports the finding of the trial court. *Hall v. State*, (1980) Ind., 405 N.E.2d 530.

In the case at bar, the evidence which supports the finding of the trial court shows that the burglary victim found the defendant sitting on the driver's side in an automobile parked near the back door of his home and hidden from plain view. In the back seat of the auto were several items belonging to the victim, Kirk. Inside the house, Kirk had recently discovered an intruder in the process of stealing other items. This intruder informed Kirk that other pieces of stolen property were located in the automobile in which defendant was found. Kirk testified that neither the defendant nor his companion was given permission to enter his house or to remove any of his possessions. Defendant offered no explanation for his presence at the Kirk residence or the reason why some of Kirk's belongings were resting in the back seat of the car that he was driving. Furthermore, although defendant at one point told the investigating police officer that he did not know that his companion was burglarizing the victim, he also informed the officer that the companion had picked the house out and had told him that he "was going to rip the guy off because he was a dope dealer."

From the foregoing facts, we believe that there is sufficient evidence to support a

reasonable inference that defendant had knowledge of and participated in the commission of the burglary. Ind.Code § 35–41–2–4 (Burns 1979 Repl.). Convictions for burglary have been upheld under similar circumstances by this Court in *Schweigel v. State*, (1964) 245 Ind. 6, 195 N.E.2d 848, and by the Court of Appeals in *Kyles v. State*, (1979) Ind.App., 391 N.E.2d 642.

### III.

The last issue defendant presents for review concerns the constitutionality of the habitual offender statute, Ind.Code § 35–50–2–8 (Burns 1979 Repl.) (amended 1980). He contends that because the statute permits "unlimited prosecutorial discretion" in deciding whether or not to bring an habitual offender charge in a given case, it violates the due process clause of the fourteenth amendment. We have already reached defendant's argument in *Norris v. State*, (1979) Ind., 394 N.E.2d 144, and in *McMahan v. State*, (1978) Ind., 382 N.E.2d 154, where we held that the prosecutor's discretionary use of the habitual offender statute in plea negotiations did not violate due process.

Furthermore, the same constitutional attack was made on a similar statute in *State v. Carter*, (Utah 1978) 578 P.2d 1275, where the Supreme Court of Utah held:

"The appellant claims the statute is invalid in that it allows the prosecuting attorney discretion to charge or not under the habitual criminal provision of the statute. This discretion rests in the prosecutor in every case as to whether or not to charge a violation of a criminal statute. Some selectivity is always permitted, so long as the election is not discriminatorily based on classifications of race, national origin, sex, religion, etc." *Id.* at 1277.

There is no merit in defendant's due process challenge to this statute.

For all the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.