Ben W. "Benny" THOMAS, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 381S74.

Supreme Court of Indiana.

June 30, 1982.

Alan W. Roles, Jeffersonville, Rudolph V. Binus, Louisville, Ky., for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worder, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted of Murder, Ind.Code § 35–42–1–1 (Burns 1979), Robbery, Ind.Code § 35–42–5–1 (Burns 1979), Burglary, Ind.Code § 35–43–2–1 (Burns 1979), and Theft, Ind.Code § 35–43–4–2 (Burns 1979) and sentenced to a total of thirty (30) years imprisonment. This appeal seeks review of the following issues:

(1) Whether the trial court erred in overruling a defense motion to strike, the testimony of two prosecution witnesses, such motion having been premised upon a claim of a lack of credibility.

(2) Whether the evidence was sufficient to sustain the verdicts, in that the alibi evidence was not rebutted and prosecution testimony was not credit-worthy.

(3) Whether the evidence was sufficient to establish that the defendant caused the victim's death.

(4) Whether the trial court erred in allowing witness Jerry Rowe to testify with respect to threats made to him by the defendant.

(5) Whether the evidence was sufficient to sustain guilty verdicts as to Robbery and Burglary, as Class A felonies.

On October 31, 1979, three masked intruders forced their way into the residence of Dr. Nelson Wolfe, and committed a robbery therein. Immediately after their departure, Dr. Wolfe died of acute cardiac arrhythmia.

ISSUE I

Following cross examination of State's witnesses Dowdle and Dier, Defendant moved to have their testimony stricken. Although these witnesses had been duly sworn to tell the truth, their cross examination revealed that their credibility was highly suspect, in that they admitted that they had lied while under oath on one or more prior occasions and one acknowledged that he would lie while under oath, if he thought it would serve his interests to do so. It is Defendant's claim that the evidence clearly disclosed that the oath would not deter them from lying and that they were, therefore, not qualified or qualifiable as witnesses.

Defendant has not provided us with any cogent authority for his novel position but, instead, has cited provisions of the constitution and the statute that provide for the oath and for it to be administered to witnesses. Obviously the requirement that an oath be administered cannot assure that it will not be violated. Its purpose is to assure that the witness understands the duty he is assuming and the possible consequences of violating that duty. *Tomlin v. State,* (1965) 247 Ind. 277, 215 N.E.2d 190. The credibility of witnesses is a matter for the trier of fact to determine. There was no showing that the witnesses did not understand the significance of taking the oath but only evidence indicating that they might violate it upon sufficient provocation. This affected only their credibility and not their competence.

## ISSUE II

The defendant next contends that the evidence is insufficient to sustain the verdicts. Defendant's wife and family friends testified that the defendant was in Cincinnati at the time that the offenses were committed, and he argues that the combination of his alibi defense, which was not directly rebutted, and the lack of credibility of witnesses Dier and Dowdle, render the verdicts improper.

"Upon a review for sufficient evidence, this Court will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. * * * In such a review, we will not weigh conflicting evidence nor will we judge the credibility of the witnesses." (Citations omitted) *Loyd v. State,* (1980) Ind., 398 N.E.2d 1260, 1264, *cert. denied* (1980) 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

A conviction may be sustained upon the uncorroborated testimony of an accomplice. *Reynolds v. State,* (1980) Ind., 409 N.E.2d 639, 640; and, as hereinbefore determined, the testimony of Dier and Dowdle was properly admitted into evidence. Their credibility was for the jury to determine. Furthermore, contrary to Defendant's contention, the jury may disbelieve an alibi, if the State's evidence in chief is credible. The State does not bear the burden to rebut, directly, a defendant's alibi. *Casterlow v. State,* (1971) 256 Ind. 214, 267 N.E.2d 552; *Williams v. State,* (1976) 265 Ind. 354, 354 N.E.2d 246. There was sufficient evidence presented to sustain the jury's finding of guilt beyond a reasonable doubt.

## ISSUE III

The decedent, Dr. Wolfe, had a long history of heart disease and had, on several prior occasions, undergone surgery for several disorders, including his diseased heart. At the time of the criminal episode, he was recuperating from surgery to his leg, which had been performed two months earlier, to effect an arterial bypass. The defendant and his cohorts forced Dr. Wolfe, his wife and his adult daughter to lie on the floor. Dr. Wolfe was handcuffed but not otherwise bound. The ladies were bound, hand and foot. Dr. Wolfe, was not otherwise physically abused, and when he complained of his discomfort, he was provided with a pillow.

The intruders demanded to know the whereabouts of and combination to the family safe, and when the information was refused, they slapped and shoved the ladies but did no consequential injury to either. Ultimately, they found the safe and compelled Mrs. Wolfe to open it. They removed the contents and departed.

During the episode, Dr. Wolfe complained of pain in his leg and of feeling faint. He also evidenced extreme fear. His daughter testified: "Daddy just kept saying, 'Oh, I'm so scared; I'm so scared.' I've never heard such fear in Daddy's voice before and he was saying that his leg was hurting him and he asked the men to be careful with his leg." Immediately after the intruders left, Dr. Wolfe said, "Oh, I'm fainting," emitted a "snorting noise" and died.

Dr. Nedelkoff, a pathologist, performed an autopsy and testified that Dr. Wolfe was suffering from a number of physical disorders and died from acute cardiac arrhythmia secondary to and complicated by the other disorders. Hypothetically, he testified that the stress occasioned by the robbery ordeal would have been the primary cause of death. Upon cross examination, Dr. Nedelkoff acknowledged that, inasmuch as he had not been present, he could not say how much stress Dr. Wolfe had experienced. He also acknowledged that the autopsy revealed traces of alcohol, nicotine, caffeine, codeine and barbiturate but that he did not regard them as being significant, under the circumstances, and did not determine the amount of any.

Defendant argues that in view of the inability to gauge the degree of stress that Dr. Wolfe had undergone and because of the extraneous substances acknowledged to have been present in his blood—one or more of which in sufficient quantity, might have caused his death—the stress, as the "direct

or proximate" cause of death had not been established, beyond a reasonable doubt. He is in error. "It is a familiar principle of criminal law that it is not necessary that death should be the proximate result of the felonious act." *Sage v. State*, (1891) 127 Ind. 15, 30, 26 N.E. 667, 672.

■ Proof beyond a reasonable doubt does not require proof to a moral certainty.

" 'The rule of law defining proof beyond a reasonable doubt has been well settled for many years and requires each juror to be so convinced by the evidence that as a prudent man he would feel safe to act upon such conviction in matters of the highest concern and importance to his own dearest and most important interests, under circumstances where there was no compulsion or coercion upon him to act at all. The standard of a prudent man is that of a reasonable man. If different persons might reasonably arrive at different conclusions from that reached by the trial jury, the verdict will not be set aside for that reason." (Citations omitted) *Woods v. State*, (1980) Ind., 413 N.E.2d 572, 575, and cases therein cited.

■ As in *Booker v. State*, (1979) Ind., 386 N.E.2d 1198, the jury was warranted in finding, beyond a reasonable doubt, that the "arrhythmia," which produced the death, was "brought on" by the emotional stress occasioned by the robbery. Defendant seeks to distinguish his case from *Booker* in that, there the decedent had been knocked to the ground and slightly injured. This will not suffice. The physical debility that caused Dr. Wolfe's death was reasonably found by the jury to have been produced by the defendant's acts in committing the robbery. Under the statute, he is guilty of murder.

### ISSUE IV

Defendant argues that the court should not have permitted witness Jerry Rowe to testify concerning threats made to him by the defendant. The witness had been a courier of private jail correspondence between the defendant and witness Dier and is alleged to have given copies of this correspondence to the police.

■ Defendant argues that the court erred in overruling his objection to the witness' testimony. Although a specific objection does not appear in the record, Defendant appears to urge that Rowe's testimony was irrelevant as unrelated to the charged offenses. However, lack of relevancy is "too general [an objection] to present any question for appellate review." *O'Conner v. State*, (1980) Ind., 399 N.E.2d 364, 366, *Lucas v. State*, (1980) Ind., 413 N.E.2d 578, and the failure to specify a ground for the objection is fatal to entitlement to such review. *Rinard v. State*, (1976) 265 Ind. 56, 61, 351 N.E.2d 20, 23.

■ Furthermore, Defendant did not present this issue in his Motion to Correct Errors. Error, if any, is; therefore, not subject to review. *Finch v. State*, (1975) 264 Ind. 48, 338 N.E.2d 629.

### ISSUE V

Defendant's challenge to the sufficiency of the evidence to sustain the guilty verdicts as to robbery and burglary, as Class A felonies, presumes that the evidence was insufficient to sustain a finding that he caused bodily harm or death. Our holding that the evidence was sufficient to sustain a finding that he caused Dr. Wolfe's death, as set forth in Issue III, is also determinative of this issue and renders further discussion unnecessary.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.